290 So.2d 214

**Roosevelt BAKER**

v.

**STATE.**

**8 Div. 448.**

Court of Criminal Appeals of Alabama.

Dec. 4, 1973.

Rehearing Denied Jan. 2, 1974.

———◆———

Sherman Powell, Sr., Decatur, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Roger M. Monroe, Sp. Asst. Atty. Gen., Birmingham, for the State.

BOWEN W. SIMMONS, Supernumerary Circuit Judge.

Appellant-defendant was indicted and convicted for the offense of selling marijuana contrary to law. The trial court fixed the punishment at eight years imprisonment in the penitentiary. The defendant appeals from the judgment.

Circumstances leading to the arrest of the defendant and his conviction were spearheaded by a narcotic agent for the State, James G. Ward, and a local informer, J. B. (Dutch) Holland. These two con-

tacted the defendant at his home in Decatur where they were waiting for him to arrive from a short mission. The defendant and the informer were acquainted with each other. This acquaintance served as an entree to the subject of marijuana or "grass." The latter is a street name for marijuana.

The defendant was riding in an automobile when he returned home. The agent, after being introduced, brought up the subject of marijuana. After some discussion, the defendant left the room and went to his Cadillac parked outside and, while the agent observed through a window, opened the front door of the parked vehicle. The agent testified that the defendant appeared to be getting something off the seat of the automobile. This occurred during the daylight hours. When the defendant came out of the car, as the agent testified, he shut the door and walked toward the rear of the vehicle. When he again came into the view of the agent the defendant, according to the agent, had what appeared to be manila envelopes in his hand. These envelopes were the same size as those introduced into the evidence, infra. The witness could not count the number. The defendant then walked toward the end of Brooks Street to a point where the agent could not see him, and in just a few minutes returned to the building where he had left the agent and the informer. He did not have the envelopes and had nothing in his hands. The defendant then stated to the agent " * * * that a guy down the street had the stuff and we could go down there and get it."

The defendant, the agent and the informer all got into the agent's automobile and proceeded in the direction that the defendant had walked with the manila envelopes to a point where the defendant instructed the driver "to pull up in front of the third house—on the left." The defendant said "just blow the horn and the man will come out." A negro man dressed in military clothes with a name patch "Miller" over one pocket of his fatigue jacket

came out. The agent inquired and received the defendant's affirming reply that the man was "the one who had the grass." Miller had four manila envelopes in his hand. The agent testified:

" * * * At this time he opened his hand and said, 'You know good grass when you see it?' I said, 'Yes.' I said, 'I have seen enough of it.' And at this time he handed the packages to me, and I opened one of them and looked into it and observed what in my opinion was marijuana. I at this time took forty dollars from my pocket out of official state funds and paid it to him."

While this was going on, according to the agent, the defendant was in the car with them. The agent further testified that he asked Miller if he could come back and get a larger quantity. Instead of Miller replying the defendant said, according to the agent, "come back any time and get as much as you want."

Miller then got out of the rear seat of the car. Thereupon, as the agent was turning the automobile around, a negro female came out to "our" car and hollered to the defendant that his brother had been cut. The defendant jumped out of the car and left with the female. The agent and the informer left the area.

It is unnecessary to detail all the evidence relating to how a police chief of Athens put the agent in contact with the informer. Nor is it necessary to detail how the agent and the informer contacted the defendant.

The State Toxicologist, Van B. Pruitt, Jr., (who was the first witness and used out of order) testified that he received four manila envelopes by registered mail from the agent; that he tested the contents of the envelopes; that the contents were marijuana. The envelopes were introduced into evidence, supra.

The defendant testified inter alia that Ward, the agent, asked him if he knew where he could get some marijuana. In

answer to this inquiry, the defendant told him "there was a boy down here this morning. He asked me did I want to buy some stuff. I told him, 'No,' that I didn't have no money to buy none. He said, 'You reckon he would sell any?' I said, 'I don't know.' He said, 'Would you take this money and go on and get me forty or fifty dollars worth?' I said, 'No, I ain't going to do that.' I said, 'If he wants to sell you some, I can tell him there is a friend of mine wants to buy some and you can buy it.' "

The defendant further testified that he left the house and went almost a block on Brooks Street and contacted the "boy" and spoke to him about it. We quote from the defendant's testimony.

"A. Yeah, I told him, I said, 'There is a couple of —' I said, 'One friend down to my house.' He said he had a friend, and he said, 'If you still got some stuff you want to sale, (sic) you can make a sale if you want to.' I say, 'I know J. B. He is a friend of mine. You can use your best judgment about it.' He said, 'Well, it don't matter no way, because I'm leaving here no way. I'll be going back tomorrow.' "

\* \* \* \* \* \*

"A. He asked me, he said, 'Well, how much do he want?' I said, 'I don't know.' So I went back to Mr. Ward. I asked him, I said, 'How much did ya'll want?' He said, 'Well, I want about fifty dollars worth.' And he said, 'Well, take the—we will take the money.' I said, 'No, I —' I say, 'I'll just go back and tell him how much you want.' I said, 'You can go up there and buy it yourself.'

"Q. Well, did you go back and tell the man?

"A. Yeah, I went back up there and told him that he—give me the stuff to take back down there—he wanted to give me the stuff to take back down there. I said, 'No, you will have to do that yourself.' "

The defendant then went back again and told the agent what Miller said. The defendant, agent and informer then went back to Miller's house in the agent's car. Ward, the agent, sounded his horn and Miller came out. Ward told him how many bags he wanted and gave him the money. Then it was, according to the defendant, that he received notice that his brother was injured. The defendant contends that he then left in a run. The defendant denied that he had any interest in those "envelopes" that the boy gave Ward; that he had never seen them before. The defendant admitted on cross examination that he had been convicted for second degree burglary.

We think it is quite clear from the evidence, including that of the defendant, that the agent approached the defendant about selling him some marijuana; that the defendant upon such approach left and went to the residence of one Miller and there ascertained that he would make the sale; then he returned and told the agent about Miller, and then went with him and the informer to Miller's house.

It is also clear that Miller delivered the marijuana to the agent who paid him therefor, but the defendant contends that he had already left at that time. The agent testified to the contrary.

■ While there is some conflict as to whether the defendant ever had possession of any manila envelopes that contained the marijuana thereby positively placing the delivered marijuana in the possession of the defendant, it is undisputed that the defendant made the contact with Miller and promoted the sale by furnishing Miller with a customer. The defendant was charged with notice, by operation of law, that it was illegal to sell marijuana. The Supreme Court commenting on the operation of § 6219, Code 1907, now Title 14, § 14, Recompiled Code 1958, observed in McMahan v. State, 168 Ala. 70, 53 So. 89, 90 as follows:

"\* \* \* Any word or act contributing to the commission of a felony, in-

tended and calculated to incite or encourage its accomplishment, whether the one so contributing is present or not, brings the accused, under such circumstances, within the influence of the cited statute. Ferguson v. State, 134 Ala. 63, 32 So. 760, 92 Am.St.Rep. 17, and authorities therein cited."

 Not only did the defendant furnish the customer but he first went to see Miller about making the sale and then brought the purchaser to Miller and thereby placed them in contact that eventuated in the sale. The defendant became a principal under the law.

The trial court did not commit error in overruling the motion for a new trial, nor did it commit error in refusing the defendant's written charges 1 and 2. The judgment is due to be and is hereby affirmed.

The foregoing opinion was prepared by the Hon. Bowen W. Simmons, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

Affirmed.

All the Judges concur.