Argued July 25, affirmed August 11, opinion modified on petition
for reconsideration October 13, 1975 (23 Or App 39, 541 P2d
163), petition for review denied February 10, 1976

# STATE OF OREGON, *Respondent, v.* JOSEPH WALTER TEMPLETON (No. C 74-12-3877 Cr), *Appellant.*

538 P2d 950

*Stephen A. Moen,* Portland, argued the cause and filed the brief for appellant.

*John Petersen,* certified law student, University of Oregon Law School, Eugene, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and THORNTON and LEE, Judges.

THORNTON, J.

Defendant was convicted of criminal activity in drugs by 'furnishing' marihuana to another. ORS 167.207. He appeals contending that the trial court erred in denying his motion for dismissal and in finding him guilty.

On October 17, 1974, Gary Muncy, an undercover officer with the Multnomah County Sheriff's office, went with an acquaintance, Larry Wright, to the residence of the defendant. Wright alone conferred with defendant, arranging for Muncy to meet with defendant at a later date for the purpose of discussing the purchase of a large quantity of marihuana. Muncy and Wright then left.

The following evening, October 18, Muncy picked up Wright and returned to defendant's residence to discuss the purchase. After being introduced to Muncy, defendant asked him what he could do for him. Muncy explained that he wanted to purchase 10 or 11 pounds of marihuana. Defendant agreed to have his cousin procure that amount of marihuana for Muncy,

as well as some for defendant. Pursuant to this agreement defendant and his cousin left to get the marihuana.

Muncy waited for them at defendant's residence. When the pair did not return by 1:00 a.m., Muncy left.

On October 21 defendant contacted Wright and offered to consummate the previous agreement at that time. Wright called Muncy and communicated this information to him. Since Muncy was busy on another matter, it was agreed that they would meet again on the following day. The following evening, October 22, Wright again called Muncy. Muncy picked up Wright and they proceeded to defendant's residence to complete the deal. They went inside where defendant was waiting with a man by the name of Michael Martin, who was then living at defendant's home. There was some dispute as to what transpired next.

Martin stated that defendant advised him that his cousin was unreliable and that Martin would be better able to assume the task of locating a seller. Defendant and his wife testified that Martin volunteered himself without any intervention by defendant. It was agreed that Muncy would contribute $890 toward the purchase and that defendant would put up $130. Martin, however, decided that this was not enough money to cover the purchase. For this reason Martin left with Muncy to make some phone calls in order to locate a seller and additional purchasers. Martin talked to an unidentified female, presumably the seller, and told her he had a buyer for 10 pounds of marihuana. Martin then contacted a Mr. Bailey and another party who agreed to put up an additional $150. Martin talked to the seller shortly thereafter and was told that the price for a 10-pound lot would be $118.50 a pound. Muncie and Martin then returned

to defendant's residence where they informed defendant that they had located a seller, and began discussing the method by which the delivery was to be taken. Muncy was instructed by both Martin and defendant as to how he should conduct himself at the seller's residence.

After working out the details Muncy and Martin left for the seller's residence with Bailey's $150, defendant's $130 and Muncy's $890. When they arrived at the seller's residence Muncy left the money in his car and they went inside. At that time 10 individually wrapped semi-bricks of marihuana were sold to Martin and Muncy. Immediately thereafter police made a series of arrests at the seller's residence and at the defendant's residence.

The crux of the case is the application of the term "furnishes" in ORS 167.202(3). That statute defines the term as follows:

> " 'Furnishes' means to sell, barter, exchange, give or dispose to another, or to offer or agree to do the same, and includes each such transaction made by any person, whether as principal, proprietor, agent, servant or employe."

Defendant argues as follows: That in order to be guilty of furnishing marihuana to the undercover agent the state must prove that defendant was directly associated with the seller, and that the state's evidence was that the defendant did not know the seller, nor assist or collaborate with the seller beyond furnishing $130 as a co-purchaser and discussing the purchase procedure. Defendant relies chiefly on *State v. Buchanan,* 8 Or App 150, 493 P2d 184 (1972), and *State v. Catterall,* 5 Wash App 373, 486 P2d 1167 (1971). In *Buchanan* the evidence tended to prove that defendant introduced a marihuana purchaser to a seller and gave the seller the "look" which assured the

seller that the sale was "safe." In reversing the conviction of defendant we held that the evidence was insufficient to convict defendant of aiding and abetting the sale of marihuana.

The state, on the other hand, asserts that viewing the evidence as a whole the defendant engaged in a single, continuous transaction which began with an agreement to furnish Muncy with marihuana, which fell through, but which eventually culminated in the actual furnishing of marihuana to Muncy. The state relies chiefly on *State v. Koppenhafer,* 11 Or App 412, 502 P2d 610 (1972), Sup Ct *review denied* (1973). *Koppenhafer* turned on the meaning of the term "sale" under a former statute, now repealed, prohibiting the sale of dangerous drugs. The facts were as follows: An undercover agent asked defendant to obtain drugs for him. The pair drove to a residence belonging to persons known to defendant. Defendant took the purchase money from the agent, went into the residence and returned with the drugs, which he then delivered to the undercover agent. We held that defendant was not entitled to an acquittal on the theory that he had not been a seller at all, but was at most an agent for the buyer.

■ While defendant's conduct on October 22 taken by itself arguably did not constitute 'furnishing,' there was other evidence which established that at the October 17 meeting between defendant and Officer Muncy at defendant's residence, defendant expressly offered and agreed to furnish Muncy with marihuana to be procured by defendant's cousin, and that defendant and his cousin then went out to secure the drug. This evidence was sufficient to prove the offense, even though this transaction fell through because of the inability of defendant and his cousin to locate a source. Additionally, there was evidence that

on October 21, defendant contacted Wright to see if Muncy and Wright still wanted to go through with the deal. This constituted a reaffirmation of the "offer to furnish" made three nights before.

■ Unlike a "sale," the act of 'furnishing' under ORS 167.202(3) does not require that the transaction actually be consummated nor that the transaction be financially remunerative to the furnisher.

■ Finally, although the indictment names October 22, 1974, as the date of the offense we hold that the exact time is not a material element of the crime of criminal activity in drugs by furnishing. ORS 135.715. *See, State v. Newton,* 1 Or App 419, 463 P2d 372 (1970).

Affirmed.