348 So.2d 848 (1977)
Jessie HILL
v.
STATE.
4 Div. 521.
Court of Criminal Appeals of Alabama.
May 24, 1977.
Rehearing Denied June 28, 1977.
Larry W. Roney, Phenix City, for appellant.
William J. Baxley, Atty. Gen. and Linda C. Breland, Asst. Atty. Gen., for the State.
CLARK, Supernumerary Circuit Judge.
The indictment under which defendant-appellant was tried and convicted charged, inter alia, that he did "unlawfully sell marijuana, a controlled substance, in violation of Act Number 1407 of the 1971 Regular Session of the Alabama Legislature, otherwise known as the Alabama Uniform Controlled Substances Act." Code of Ala., 1973 Cum. Supp., Tit. 22, § 258(25) et seq. The court sentenced him to imprisonment in the penitentiary for fifteen years.
There were only two witnesses for the State, one testifying as to the conduct of defendant upon which the State based its case, the other testifying in effect that the *849 "controlled substance" involved was marijuana.
At the conclusion of the State's case, defendant moved to exclude the evidence. The motion was denied. Thereupon, defendant testified, disclaiming entirely his identity as the person identified by the witness for the State as Jessie Hill, the defendant.
The testimony of the State was brief and is stated concisely in appellant's Statement of Facts, which appellee in its brief "adopts and incorporates by reference."
According to the Statement of Facts and the testimony of State Trooper James Edward Jackson, Trooper Jackson went to Phenix City, Alabama, during the month of June 1976 and worked as an undercover agent to detect drug sellers or users in the Phenix City area. On or about June 12, 1976, Mr. Jackson, and a paid informant, Leonard Martin, approached a group of blacks on Tenth Avenue in front of a church. Martin had a conversation with an unidentified black who later called Jessie Hill; then Jessie Hill and Leonard Martin had a conversation. Then, Martin got into the back seat of an automobile which was operated by Mr. Jackson, and Jessie Hill "seated himself in the front seat on the passenger's side." Mr. Jackson told Hill that he wanted to buy some "grass." "Jessie Hill asked Jackson what was in it for him?" At that time, Jessie Hill directed Jackson to drive to Edmonds' Estates.
When they arrived at Edmonds' Estates, Jessie Hill got out and went to apartment A-8, knocked on the apartment door and talked with a person identified as Daniel Lee. Hill motioned for Jackson and Martin to join them in the apartment. Jackson and Martin introduced themselves to Daniel Lee and asked if he had any "grass." They then told him that they wanted to buy a "dime bag." Daniel Lee went back into another room and got marijuana and Jackson gave him $10.00 for it. In the meantime, Jackson gave Jessie Hill $5.00 for Jessie Hill to purchase a "nickel bag." Jessie Hill gave the $5.00 to Daniel Lee and Daniel Lee went back into the other room and brought Jessie Hill a "nickel bag" of marijuana. At that point, according to Jackson, Jessie Hill said, "To prove how good the stuff is we'll smoke one." Hill went into the kitchen and came back with a rolled "reefer," which was lit and the "reefer" was passed among Martin, Jackson and Hill who sampled the marijuana.
Daniel Lee lived in apartment A-8, Edmonds' Estates. As defendant, Jackson and Martin were leaving the apartment, Lee said to them, "that if it wasn't good stuff, that we could bring it back."
In determining whether there was sufficient evidence to present an issue of fact whether defendant sold marijuana as charged in the indictment, we must resolve the question whether his actions were such as to bring him within the language of Code of Alabama, Recomp. 1958, Tit. 14, § 14, as follows:
". . . and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors."
Pertinent parts of the statute under which defendant was indicted and tried provide:
"Except as authorized by this chapter, any person who possesses, sells, furnishes, gives away, obtains, or attempts to obtain by fraud . . . controlled substances enumerated in schedules I, II, III, IV [and] V is guilty of a felony and upon conviction for first offense may be imprisoned not less than 2 nor more than 15 years and, in addition, may be fined not more than $25,000: except any person who possesses any marihuana for his personal use only is guilty of a misdemeanor and upon conviction for the offense shall be imprisoned in the county jail for not more than one (1) year, and in addition, shall be fined not more than $1,000.00; but the penalties for the subsequent offenses relating to possession of marihuana shall be the same as specified in the first sentence of this section 258(47)(a)." *850 Code of Alabama, 1971 Cum.Supp., Tit. 22, § 258(47)(a).
There is no doubt, of course, that a jury issue was presented whether the facts as testified by the State's witness are true or whether, on the other hand, the testimony of defendant, who denied being with State Trooper Jackson, and Leonard Martin on the occasion narrated by Trooper Jackson, should have been accepted as true. The question now is whether the undisputed testimony of Officer Jackson presents an issue of fact for the jury to determine whether defendant aided or abetted Lee in making the sale. We must accept Officer Jackson's testimony as true, which the jury in its rightful province did, and as to such action we have no qualm.
Until recent years, legal texts and digests treated most of the problems we have today relative to drugs under the caption of "Poisons." Most comprehensive texts and digests now consider them under the title of "Drugs and Narcotics." Numerous authorities are to be found therein relative to the question whether one is guilty of illegally selling drugs or prohibited substances under circumstances where the sale is actually made by another. In 28 C.J.S. Supp., Drugs and Narcotics § 173, it is stated:
"§ 173. Distribution or Sale

"a. In general
"b. Aiders and abettors
"a. In General

"A person may be guilty of selling a controlled substance or drug where he is a go-between, agent for the seller, or agent for the buyer, but not where he is merely the buyer.
"According to some authorities, a person who participates in a forbidden drug transaction is guilty of selling the drug whether he is a go-between, or an agent for the seller, or an agent for the buyer, at least where he has knowledge of the illegality of the substance being transferred.
"Other authorities hold, however, that a person is not guilty of selling drugs where he acts solely as the buyer's agent. Thus, a person is not guilty of selling drugs where he acted in the transaction only as the agent, servant, or employee of a law enforcement officer and received no benefit for himself, or where he facilitated the sale, but had no financial interest in it and was not employed by the seller. . . .
"Even where it is the rule that an agent of the buyer is not guilty of a sale, an intermediary who exacts a fee for his services will be guilty of making a sale; and an intermediary who possessed drugs for a short time, and then transferred them and took money is guilty of selling the drugs. Likewise, a person who makes a sale with the aid of an accomplice, or makes a sale jointly with an accomplice or knowing the intent of an accomplice encourages him to make a sale violates the statute which prohibits a sale. A person who acts as agent of the seller may be guilty of the offense of selling a narcotic or controlled substance even though he was acquainted with the buyer and did not share in the proceeds of the sale.
". . .
"b. Aiders and Abettors

"A person who actively assists the commission of the offense is guilty as an aider and abettor of possession or sale of a controlled substance or narcotic.
"Statutes which treat aiders and abettors as principals apply to offenders against laws which prohibit sale or distribution of controlled substances or narcotics, so that a person who aids and abets the commission of such an offense is guilty of the offense. So a person may be guilty as an aider and abettor of an unlawful sale where he received payment directly from the buyer, or where he was present encouraging the sale.
"Where, as discussed supra subdivision a of this section, a mere agent or employee of the purchaser is not liable for selling a narcotic, a person who aids only the purchaser is not liable as an aider and abettor of the seller; and a person who merely drove another person to the place where the latter discarded a package containing *851 a drug and was waiting for his companion's return when arrested was not thereby shown to be an aider and abetter of possession of the drug."
It can readily be seen from the above quotations, and the many cases footnoted, that, facially at least, the authorities are not in such accord that we can chart our course by them without careful analysis of them. In proceeding to do so we find that we must differentiate as among them and other related cases.
We find that many of the cases in which the question of one's guilt turns on whether he has aided or abetted another, or become the accomplice of another, in the commission of a crime, the inquiry centers on the nature of his conduct rather than on any relationship between him and the principal offender. For that reason, it seems that often overlooked is the principle that for one to be criminally liable for a crime actually committed by another, the two must to some extent be in league with each other. There must be some community of interest or unlawful intent, even though such community need not be for any great length of time beforehand but may be merely momentary. In Mikell, Clark's Criminal Law, § 43, p. 108 (3d ed. 1915) it is stated:
"Wherever persons join for the purpose of executing a common criminal purpose, each one is the agent of the other as to all acts in furtherance thereof, and each is criminally liable for such acts of the other. . . ."
The common purpose need not be formed before convening at the place of the crime. Amos v. State, 83 Ala. 1, 3 So. 749.
Judge Learned Hand, in tracing the development of criminal responsibility of aiders and abettors and the like, even beyond the Statute of Westminster I, Chap. XIV (as commented upon in Coke, Inst. II, p. 182), to the Fourteenth Century, as discussed in Pollock and Maitland, Vol. II, p. 507, stated:
"It will be observed that all these definitions have nothing whatever to do with the probability that the forbidden result would follow upon the accessory's conduct; and that they all demand that he in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed. All the words usedeven the most colorless, `abet'carry an implication of purposive attitude towards it." United States v. Peoni,[1] 100 F.2d 401, 402 (2d Cir. 1938)
Five years before Judge Learned Hand wrote the opinion in Peoni, Judge Samford had stated:
". . . But, in order to authorize a conviction as an aider or abettor, there must be by prearrangement, or on the spur of the moment, a common enterprise or adventure and a criminal offense contemplated. In such a case each is a conspirator, and, if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. . . ." West v. State, 25 Ala.App. 492, 149 So. 354 (1933).
In West, Judge Samford concluded that, although guilty participation need not be proved by positive testimony and that a jury should determine its existence from the facts in the case,
". . . An accessory before the fact presupposes a prearrangement to do the act or a present aid or abetting.
"The evidence for the defendant in this case tends to prove that he was not an accessory before the fact, and that he did not aid or abet the crime. . . ."
In Morei v. United States, 127 F.2d 827 (6th Cir. 1942), the court relying upon both Peoni and West, in holding that a co-defendant, Dr. Piatt, could not be legally found guilty of buying or selling narcotics under circumstances stated by the court, said at 831-832:

*852 ". . . There was no evidence that Dr. Platt planned with the other defendants or conspired directly or indirectly with them, or had any understanding with Morei to buy or sell narcotics. There was no community of scheme between him and the other defendants. They shared in no common intent or plan, nor was there any prearrangement or concert of action. Dr. Platt was paid nothing and it is not claimed that he asked for any remuneration or expected to receive anything from the claimed transaction. Accepting the facts as contended for by the prosecutionwhich are squarely contradicted by the defendant the only thing Dr. Platt did was to give Beach the name of Morei as a man from whom he might secure heroin to dose horses in order to stimulate them in racing. This is the purposive association with the venture that, under the evidence in this case, brings Dr. Platt within the compass of the crime of selling or purchasing narcotics, either as principal, aider and abettor, or accessory before the fact."
Some of the cases upholding convictions for the sale of controlled substances, or the like, including some of the cases cited in the footnotes to 28 C.J.S. Supp., Drugs and Narcotics § 173, were based upon statutes that defined, "sale," "sell," and "selling" more comprehensively than those words ordinarily signify. Boone v. State, 291 So.2d 182 (Miss. 1974); Higby v. State, 485 P.2d 380, Wyo. 1971; People v. Shannon, 15 Ill.2d 494, 155 N.E.2d 578 (1959). By reason thereof, the court in Boone concluded:
"We are of the opinion that the definition of `sale' in the statute where `delivery' is made shows a legislative intent that the act of a person making such sale and delivery constitutes a sale even if such person is acting as an agent for either the purchaser or seller."
In Oregon the particular problem became even more complicated, in that three different statutes were considered, one not defining the word "sale," another defining it with a broader signification than usual as indicated above, and a third, in which the indictment charged that defendant "furnished" someone else the marijuana, based upon a statute that defines the word "furnishes," as follows:
"`Furnishes,' means to sell, barter, exchange, give or dispose to another, or to offer or agree to do the same, and includes each such transaction made by any person, whether as principal, proprietor, agent, servant or employee."
As to a sale undefined by statute, it was held that where defendant introduced a marihuana purchaser to a seller and gave the seller the "look" which assured the seller that the sale was "safe," such evidence was insufficient and the judgment was reversed. State v. Buchanan, 8 Or.App. 150, 493 P.2d 184 (1972). As to the second situation, it was held in State v. Koppenhafer, 11 Or.App. 412, 502 P.2d 610 (1972), as to evidence to the effect that defendant took the purchase money from an undercover agent, went into a residence and returned with the drugs, which he then delivered to the undercover agent, that he was not entitled to an acquittal as a matter of law. In the third case, in which an undercover agent had dealings with the defendant as a purported intermediary for three or four days and the court held evidence was sufficient to show "a furnishing" within the meaning of the statute, the court said:
"The crux of the case is the application of the term `furnishes' in ORS 167.202(3). That statute defines the term as follows: "`Furnishes' means to sell, barter, exchange, give or dispose to another, or to offer or agree to do the same, and includes each such transaction made by any person, whether as principal, proprietor, agent, servant or employee.'" State v. Templeton, 22 Or.App. 322, 538 P.2d 950 (1975)
In State v. Gladstone, 78 Wash.2d 306, 474 P.2d 274 (1970), an undercover agent attempted to buy marijuana from defendant, but defendant said he did not have enough to sell, but gave the agent a map and oral directions to an apartment of a person he thought might be able to supply *853 him. The agent followed the map and purchased marijuana from the person to whom he had been directed. The court held:
"There being no evidence whatever that the defendant ever communicated to Kent the idea that he would in any way aid him in the sale of any marijuana, or said anything to Kent to encourage or induce him or direct him to do so, or counsel Kent in the sale of marijuana, or did anything more than describe Kent to another person as an individual who might sell some marijuana, or would derive any benefit, consideration or reward from such a sale, there was no proof of an aiding and abetting, and the conviction should, therefore, be reversed as a matter of law. . . ." 78 Wash.2d at 314-315, 474 P.2d at 279.
In United States v. Moses, 220 F.2d 166 (3d Cir. 1955) appellant was convicted as a seller of narcotics under § 2 of Tit. 18, United States Code, which then provided that one who "aids, abets, counsels, commands, induces or procures" the commission of an offense is a principal. Two undercover agents came to defendant's house and inquired of her, a drug addict, as to where they could purchase some narcotics. She told them the names of two people. One of them arrived at the house before the agents left. She introduced the agents to the prospective seller. He asked her if they were all right and she assured the prospective seller that the purchasers were all right, that she had seen them on other occasions. Thereafter, after they had all left defendant's house, a sale was made by Cooper to the agents. The court held:
"The undisputed facts show the appellant acting solely at the behest of the prospective buyers and in their interest. At the buyers' request she did two things to facilitate their purchase. She introduced them to the seller and she vouched for their bona fides, if purchasers of contraband drugs can be so characterized. That is all that was proved. There was nothing to show that she was associated in any way with the enterprise of the seller or that she had any personal or financial interest in bringing trade to him. Although appellant's conduct was prefatory to the sale, it was not collaborative with the seller. For this reason the conviction cannot be sustained. ". . .
"We are satisfied that the absence of any showing of collaboration or association between appellant and Cooper prevents her from being convicted under Section 2 of Title 18 as a guilty participant in Cooper's sale of narcotics."
To the same effect is a contemporary of Moses, Adams v. United States, 220 F.2d 297 (5th Cir. 1955).
A distinction between criminal responsibility for "selling" a controlled substance, unaided by statutory amplification of the meaning of "selling," and other action with reference to controlled substances such as "deliver," "distribute," "furnish," and the like is brought to clear focus in two Massachusetts cases, the one holding that a "sale" was not consummated by action of defendant in assisting a prospective purchaser to obtain the substance, the other holding that somewhat similar action furnished a basis for a finding that there had been "distribution" in violation of a particular statute relating to drugs or controlled substances. Commonwealth v. Harvard, 356 Mass. 452, 253 N.E.2d 346 (1969) and Commonwealth v. Noons, 308 N.E.2d 915 (Mass.App. 1974). The distinction is compacted in Noons, wherein a conviction for "distributing" was upheld:
". . . The case of Commonwealth v. Harvard, 356 Mass. 452, 253 N.E.2d 346 (1969), relied upon by the defendant, is distinguishable from the case before us in that the conviction there reversed was for selling narcotics, not distributing them. Indeed, the court implied that if the defendant there had been charged with delivery of a narcotic drug, substantially the offense charged here (see G.L. c. 94C, § 1, `Distribute'), the conviction would have been sustained. . . ."
An accentuation of the distinction between a "sale" of a controlled substance and some other statutorily proscribed action *854 with reference to it is to be found also in two relatively recent cases in Oklahoma. Posey v. State, 507 P.2d 576 (Okl.Cr.App. 1973) and Tipton v. State, 528 P.2d 1115 (Okl.Cr.App. 1974). There the distinction was between a "sale" and a "distribution." In each case defendant was acting at the request of an undercover agent in obtaining the controlled substance and relied for a defense upon what some courts have denominated as the "procuring agent" principle, which designation apparently stems from United States v. Sawyer, 210 F.2d 169 (3d Cir. 1954).
In Posey, supra, in following the lead of Massachusetts and "almost all the Federal Circuits," the court upheld the procuring agent defense to an indictment charging a "sale" and stated at 578:
"In the instant case, there is no proof of `any community of scheme,' collaboration, or association, between defendant and the seller `Stu,' nor did defendant have any personal or financial interest in the transaction. Consequently, there being a total failure to prove the necessary element to constitute a `sale,' as to the defendant, and no proof of conspiracy or pre-arranged plan, we are bound to hold that the verdict of guilty could only have been based upon speculation."
The court likened the facts to those furnishing the basis for a similar result in Commonwealth v. Simione, 447 Pa. 473, 291 A.2d 764 (1972), and summarized the facts in Simione as follows:
". . . In the Pennsylvania case the evidence showed that one Paul Guy persuaded Simione to arrange a sale of a quantity of hashish through a third party, James Heisey. Paul Guy testified that the alleged transaction took place in the kitchen of his apartment and that the three people were all present. Guy stated that he gave a twenty dollar bill to Simione, who then handed the money to Heisey. Heisey accepted the money and gave the gram of hashish and five dollars in change to Simione, who in turn gave the hashish and change to Guy."
In Posey v. State, supra, the court cited with approval People v. Turner, 38 Mich. App. 479, 196 N.W.2d 799 (1972), in which it was held that defendant was not guilty of a "sale" by reason of his accepting twenty dollars from an informer for the purchase of heroin, buying the heroin from a third party and giving it to the informer. In Tipton v. State, 528 P.2d 1115 (Okl.Cr.App. 1974), the same court speaking through the same judge, Brett, J., and acting by the same concurring judges, as in Posey, reached a diametrically opposite result as to the question of defendant's guilt, when indicted under a statute, prohibiting a "distribution" and defining a distribution to mean to deliver, and defining deliver as the ". . . actual, constructive, or attempted transfer from one person to another of a controlled dangerous substance, whether or not there is an agency relationship."
The difference in result between cases in which defendant was charged with a "sale" in the ordinary signification of the word and in some action denominated and defined by statute is emphasized in federal cases, particularly in the Fifth Circuit, in a number of cases decided by that court in 1973, soon after passage of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq., making it unlawful to distribute particular drugs. United States v. Johnson, 481 F.2d 645 (5th Cir. 1973); United States v. Miller, 483 F.2d 61 (5th Cir. 1973); United States v. Rose, 484 F.2d 654 (5th Cir. 1973); United States v. Fletcher, 487 F.2d 22 (5th Cir. 1973). We quote from United States v. Johnson, at 646:
"Johnson's second contention is that he was nothing more than a procuring agent, a mere conduit through whom the drugs passed. Relying on cases such as Adams v. United States, 220 F.2d 297 (5th Cir. 1955), and United States v. Sawyer, 210 F.2d 169 (3rd Cir. 1954), he argues that the jury should have been instructed that a procuring agent could not be guilty of the crime charged. This argument has no merit. The rule announced in the cases cited and the other case he relied upon dealt with the prosecutions for the `sale' of narcotics. . . .

*855 Johnson was not charged with sale. Rather, he was charged under the provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970, which make it unlawful to knowingly and intentionally distribute heroin. . . . Thus the argument advanced by Johnson, based as it is upon the requirement of the prior law that the government prove the defendant to be a seller, has no application to the prosecution for distribution of heroin sub judice. . . ."

It seems from the large number of cases on the subject that recent and probably current federal prosecutions for offenses tending to show a connection with illegal drug traffic are predicated upon alleged distribution of the drug, expressly prohibited by § 841(a) and punishable under § 841(b) of the United States Comprehensive Drug Abuse and Control Act, supra. Somewhat similar provisions are to be found in §§ 258(48) and 258(49) of the Alabama Uniform Controlled Substances Act. However, defendant in this case was not charged with a distribution but with a sale of marijuana. The Alabama Act does not purport to enlarge the commonly accepted definition of sell or sale.
In the case before us, under the provision of the statute in which the particular crime is referred to as "sell" and under the indictment itself, which expressly charges that defendant did "unlawfully sell marijuana" and that such "sale took place subsequent to September 16, 1971," we have no authority by statute, by precedent of the appellate courts of Alabama, or by weight of authority or reason elsewhere, to hold that appellant in this case is subject to criminal responsibility for the crime of "selling," if his conduct, according to the undisputed evidence, does not afford a reasonable inference that he participated with the seller in making the sale.
A summary of cases upholding judgments of guilt of selling illicit drugs or controlled substances by reason of the statutory definition of "sell" or "sale" is found in Annotation, 93 A.L.R.2d 1008 and 92-100 A.L.R.2d Later Case Service 117, the latter under the caption, "Construction and Effect of `Sale' or `Sell' in Uniform Narcotic Drug Act."
We doubt not that a criminal linkage between a seller and one acting at the behest of a buyer of a controlled substance can be shown by circumstantial evidence. We so held in Baker v. State, 52 Ala.App. 150, 290 So.2d 214, writ denied, 292 Ala. 708, 290 So.2d 217. In Baker, the evidence for the State was that while the undercover agent and his informer discussed the subject of marijuana at defendant's home, defendant went to "his Cadillac parked outside . . . opened the front door of the parked vehicle . . . appeared to be getting something off the seat of the automobile" and thereafter had "what appeared to be Manila envelopes in his hand, of the same size of the envelopes containing the marijuana sold by another to the agent. Defendant, before returning to his home where the agent and informer were, went down the street and in a few minutes returned to his home without the envelopes and told the agent and the informer . . . that a guy down the street had the stuff and we could go down there and get it." Defendant, the agent and the informer then went in the agent's automobile in the direction defendant had walked with the Manila envelopes and purchased marijuana from a man by the name of Miller who came to the automobile and joined the other three therein. After buying the marijuana from Miller, the agent asked him if the agent could come back and get a larger quantity. Instead of Miller replying, the defendant said, according to the agent, "Come back any time and get as much as you want." In his testimony defendant denied that he had possession of any Manila envelopes. The court concluded that irrespective of the question whether defendant had Manila envelopes in his possession, the trial court was not in error in overruling defendant's motion for a new trial, nor in refusing defendant's request for a general affirmative charge in his favor. The circumstances in Baker are to be contrasted, rather than compared, with those in instant case.
*856 But for the express desire of defendant that he get something out of his action for the undercover agent and defendant's acceptance of five dollars with which he purchased some marijuana for himself, we find no circumstances substantially different from a multitude of situations that have arisen in connection with illegal sales, whether sales of drugs, intoxicating liquor, or other sales, where people would buy, and assist others in buying, but who steadfastly would not think of selling or being a confederate with a seller thereof. We do not think that defendant's inquiry of the officer as to what was in it for him and his acceptance of five dollars from the officer after the sale was made linked him with the seller; it more naturally linked him with the buyer.
Distinguishable on its face from this case is State v. Kraemer, 9 Or.App. 220, 495 P.2d 1241 (1972), the only case cited in note 65 of 28 C.J.S. Supp., Drugs and Narcotics § 173a, in support of the proposition that "Even where it is the rule that an agent of the buyer is not guilty of a sale, an intermediary who exacts a fee for his services will be guilty of making a sale . . ."
The facts in Kraemer, as stated by the court, were as follows:
"A Portland police officer, acting as an undercover agent, was introduced to defendant by a woman identified as Susan Bones. The first purchase was made for the officer through Susan. The officer was `swindled' in some fashion, however, and did not receive the purchase.
"On the next occasion the officer approached defendant alone and defendant agreed to procure a tablet of the narcotic for $13. They drove to a particular location and parked. Defendant took the money, walked out of sight and then returned. He handed the officer the tablet, minus one-quarter of it. Defendant stated that he had obtained the drug from one Goldsworthy using the officer's money and taking a piece of the pill as his commission. Defendant stated this was his usual practice.

"The officer testified as to a third transaction which was substantially identical to the second one. The third transaction formed the basis for the prosecution at bar." (Emphasis supplied).
The court held:
"We agree with the trial court's finding that defendant was a seller of the drug and not an agent of the purchaser. . . .
He was acting in his own interests and charged a fee in the form of one-fourth of the narcotic tablet for his services. . . . Furthermore ORS 474.010(10) provides:
"Sale" includes barter, exchange or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant or employee.'"
We do not hold that the evidence disproves the guilt of the defendant as charged in the indictment. We fully realize that there may be other circumstances, not shown by the evidence herein but consistent therewith, which circumstances would so connect appellant with the seller as to furnish a jury issue as to appellant's guilt. On the evidence before us, the trial court should have granted defendant's motion to exclude the evidence.
As the selection of a jury to try the case commenced, counsel for defendant challenged for cause all jurors who served the day before on a case in which Officer Jackson was a witness for the State, in which it appears that the "nature of the charge" was the same as the charge against appellant. The challenge was overruled. Notwithstanding our concern whether by further presentation by defendant of the circumstances of the previous case he could have shown that jurors in the other case may have been subject to challenge in this case, we must hold against appellant as to the point. It is established in Alabama that it is a ground for challenge for cause that a venireman has sat as juror in a previous case involving the same question, as this imports he has formed a fixed opinion. Smith v. State, 55 Ala. 1 (1876). The principle has been applied to a juror who sat on trial of another defendant which involved *857 the same transaction. Crowden v. State, 41 Ala.App. 421, 133 So.2d 678. The principle also applies to a companion case. Dunaway v. State, 291 Ala. 93, 278 So.2d 205 (1973), aff'g 50 Ala.App. 200, 278 So.2d 200, and conforming to Leonard v. United States, 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d 1028. That members of a venire have previously served in a similar case is likely to present a problem as to their qualification, but we are not persuaded by reason or authority that such fact alone necessarily disqualifies them. The name of the defendant in the other case of itself precludes the possibility that the other case was a companion case to the one to be tried. We accept the conclusion, supported by a long list of cited cases, reached in Government of Virgin Islands v. Williams, 476 F.2d 771, 773 (3d Cir. 1973):
"The federal courts have uniformly held that, absent some evidence of actual partiality, a juror is not disqualified merely because he previously sat in a similar case arising out of a separate and distinct set of circumstances even though the offenses charged in the cases are similar and some of the same prosecution witnesses testify in each case."
The only remaining assertion of error cannot be sustained. Objection was made and overruled to the following statement in the closing argument of counsel for the State:
"The defendant offers his own testimony and offers an alibi. He offers not one shred of corroborating evidence to corroborate what he claims."
It is not contended that the argument violates the rule against unfavorable comment upon the defendant's failure to testify, as the defendant did testify. It is contended that the argument was a comment upon defendant's failure to produce witnesses that were equally accessible to the State. We do not so find. In defendant's testimony, nothing was said by him either on direct or on cross-examination, as to whom he was with at the time the State claims he was committing the offense with which he was charged. We construe the argument as a comment upon the weakness of defendant's testimony, which is a valid subject of argument.
For the error indicated, the judgment should be reversed and the cause remanded.
The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment of the trial court is reversed and the cause remanded.
REVERSED AND REMANDED.
All the Judges concur.
NOTES
[1] Judge Hand's statement was adopted by the Supreme Court in Nye v. Nissen, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949).