406 So.2d 1008 (1981)
Ronnie SNIDER
v.
STATE.
6 Div. 461.
Court of Criminal Appeals of Alabama.
May 26, 1981.
Rehearing Denied August 4, 1981.
*1010 C. Delaine Mountain and Walter P. Crownover, Tuscaloosa, for appellant.
Charles A. Graddick, Atty. Gen., and Helen P. Nelson, Asst. Atty. Gen., for appellee.
DeCARLO, Judge.
Sale of marijuana; fifteen years.
Terry Bowman, a sixteen-year-old Lamar County High School student, testified that he and two other boys went to the appellant's residence one day early in September in order to purchase marijuana. Appellant and his wife were in their backyard when the boys arrived. Bowman and one of the other boys, Twaine Lawrence, went behind the house where Bowman engaged in a conversation with appellant. The record reflects the following:
"A. That conversation took place at the residence of Ronnie Snider here in Vernon?
"A. Yes, sir.
"Q. Was Ronnie Snider present?
"A. Yes, sir.
"Q. His wife was also present?
"A. Yes, sir.
"Q. Tell the jury the conversation, please?
"A. I went around to the side of the house and I saidhe was down there and I said `hi' and he said `hi come on in.' I climbed through part of the fence that was bent away and I went through there and I asked him if he had some marijuana, some reefer, and he said `no.' He said he might possibly be able to get me some next week sometime so I said `all right' and I told him I wanted to get and me and the other boys left.
"Q. Was there any conversation about the quantity that he expected to get?
"A. Yes, sir.
"Q. What did he say about that?
"A. Somewhere around two pounds.
. . . .
"Q. Did he say anything about you coming back for that at any later time?
"A. He just said to come back some other time next week."
The following Wednesday, September 10, the three boys returned to appellant's residence around 11:00 A.M. Terry Bowman and Twaine Lawrence approached the house, while the third boy, Richard Bowman, remained in the truck in which they were traveling.
The appellant's wife met Bowman at the door and the following transpired:
"We walked up to the house and knocked on the houseknocked on the door and his wife, Ronnie Snider's wife, came up to the door and said `hi, come on in.' I walked inside the house and I asked if I could get two joints from her and she said they didn't have it in the small quantitythey didn't have it rolled up but they had it in dime bags.
"She went back there to the back and brought some back and pinched out about twogave her about two dollars and I didn't have no rolling papers or nothing at that time and I couldn't roll it then. I went back out and me and Twaine got back into the truck and left.
"Q. What kind of container was the marijuana in?
"A. I had a cigarette packI had to go out to the truck and get the plastic off the cigarette pack and go back in there and put it in there.
"Q. You paid her two dollars for it?
"A. Yes, sir.
"Q. Was this at the same house where you had discussed the purchase of marijuana with Ronnie Snider?
"A. Yes, sir.
"Q. The lady you were talking about as being his wife; do you know her name?
"A. No, sir.
"Q. Was it the same lady that was there on the previous week when you discussed the transaction with him?
"A. Yes, sir."
*1011 The three boys then returned to school and went to their trade school class. After they returned to their school from the trade school, Terry Bowman wrapped the marijuana in a piece of paper and hid it in a wooden school locker overnight. The next day Bowman removed it from his locker and placed it in his pocket. During the third period of school, the three boys went to a truck and rolled the marijuana into cigarettes. Terry Twaine smoked the marijuana in the truck, while Richard Bowman stood watch. After they finished, they place the remains of the cigarettes under the truck. There was enough marijuana left for one cigarette. Terry Bowman gave it to Twaine Lawrence, who put it in his shirt pocket.
While the boys were smoking the marijuana, they were observed by personnel in the school kitchen, who reported the incident to faculty members. Two teachers searched the area around the truck, found the cigarette butts and reported the incident to the school principal, Mr. David Hulsey.
Mr. Hulsey contacted Police Chief Van Duke and the two men proceeded to the vocational school. Twaine Lawrence, along with several other students, was called to the director's office at the school. Lawrence, who had removed his shirt containing the marijuana at the school because of the heat, picked up the shirt and carried it with him to the office. Twaine seated himself in the office and placed the shirt under his leg, thus raising Mr. Hulsey's suspicion. Hulsey asked for the shirt and when Twaine handed it to him the package of marijuana rolled out of the shirt. Hulsey testified the package was a cellophane wrapper from a cigarette package, filled with a substance which appeared to be marijuana, which he immediately turned over to Chief Duke.
Twaine told Hulsey he purchased the marijuana from the appellant. Terry Bowman was questioned separately at the trade school office, and told the same story to which he testified at trial.
Chief Duke testified he received the package from Mr. Hulsey and Twaine Lawrence in the vocational school office and then put it into an envelope, sealed it, and locked it in his office. He then gave it to Charles Tate to take to the State laboratory to have it analyzed.
Melinda Long, a laboratory analyst for the State, testified she received a package of vegetable matter from Investigator Charles Tate. Her tests on the substance proved it to be marijuana.
Twaine Lawrence testified to substantially the same facts as presented in the testimony of Terry Bowman. However, he did not hear all of the conversation with appellant on the boys' first visit; he remained outside the house and did not observe the actual sale by appellant's wife.
The State rested at the conclusion of Lawrence's testimony. Appellant moved to exclude the State's evidence and the trial court denied his motion.
The defense called appellant to testify in his own behalf. Appellant recalled the boys' visit to his house and a discussion with them in the backyard of his house. The record reflects his recollection of the conversation and subsequent events as follows:
"Q. Tell me what was said during that conversation?
"A. Well, they come around there and asked me if I had any marijuana I would sell them and I told them no, I didn't sell any and they called mecalled some names and they said that they sent them up there.
"Q. Called some names and said they sent them up there?
"A. (Witness nods head.)
"Q. What did you tell them?
"A. I told them that I didn'tthat I didn't sell the stuff.
"Q. At any time during that conversation did you tell them that you might could get them some?
"A. No.
"Q. At any time during that conversation did you say anything about getting a couple of pounds for them to come back later?
"A. No.

*1012 "Q. On September 10, you heard the boys testify that they went to your home and purchased marijuana. Were you present in your home on September 10 when they came to your home?
"A. No.
"Q. Where were you on September 10, 1980?
"A. I was working."
Appellant stated he had no knowledge of the boys' subsequent visit to his house and their purchase of marijuana from his wife until the time of the arrest. Appellant also stated that his wife did not tell him about the boys' second visit until after he was released from jail. She told appellant that she had found the marijuana on the side of the road, and had sold the boys some upon their request. The defense rested at the conclusion of appellant's testimony.

I
Appellant argues the trial court erred in overruling the motion to exclude the State's evidence because the State failed to prove he was connected with the crime charged. He asserts the State failed to show any community of interest or unlawful intent connecting appellant with his wife in the sale of the marijuana.
The evidence produced at trial was sufficient to raise a jury question as to appellant's involvement in the crime. We must view the evidence presented in the light most favorable to the State. Bass v. State, 55 Ala.App. 88, 313 So.2d 208 (1975). The State's evidence indicated that the teenage boys approached the appellant in search of marijuana. They were told that he could and would sell marijuana to them, although not until the following week, for lack of a present supply. Appellant's wife was present and capable of hearing appellant's instructions to the boys to return the following week. When the boys did indeed return, as they were previously instructed to by appellant, the wife, without hesitation, admitted an almost total stranger into her house. She consummated the prearranged illegal sale, undoubtedly on the basis of her knowledge of Terry Bowman through her husband's conversation and agreement with the boy to sell him marijuana. She knew the boy returned at her husband's instruction, and with his approval, to purchase the marijuana. Terry Bowman testified that she said:
"... they didn't have it in the small quantitythey didn't have it rolled up but they had it in dime bags." (Emphasis added)
It was reasonable under these facts for the jury to infer that appellant and his wife acted in concert with a community of purpose in arranging and consummating the illegal sale with the teenage boys. Kendrick v. State, Ala.Cr.App., 377 So.2d 1112, cert. den., Ala., 377 So.2d 1114 (1979). An illegal community of purpose or conspiracy need not be proved by positive testimony, and in fact, is rarely so proved. Rather, the jury must look to the conduct of the parties and the totality of the testimony adduced at trial to determine the existence and extent of the conspiracy. Kendrick, supra; Knight v. State, 50 Ala.App. 457, 280 So.2d 163 (1973).
The State is required to produce evidence which affords a reasonable inference that the defendant participated in some way with the seller in making the sale, and such a linkage may be proved by circumstantial evidence. Hill v. State, Ala.Cr. App., 348 So.2d 848, cert. den., Ala., 348 So.2d 857 (1977). In Baker v. State, 52 Ala.App. 150, 290 So.2d 214, cert. den., 292 Ala. 708, 290 So.2d 217 (1974), we observed:
"Any word or act contributing to the commission of a felony, intended and calculated to incite or encourage its accomplishment, whether the one so contributing is present or not, brings the accused, under such circumstances, within the influence of the cited statute."
Where the evidence, as here, raises a question of fact for the jury and that evidence, if believed, is sufficient as a matter of law to sustain the conviction, the denial of the appellant's motion to exclude the State's evidence is not error. Perry v. State, Ala.Cr.App., 371 So.2d 969, Ala., 371 So.2d 971 (1979).

*1013 II
The trial court's oral charge, as it pertains to complicity, appears in the record as follows:
"It is a general principle of law as to certain matters arising under the criminal code that a person is not criminally liable for an offense unless it was committed by his own behavior or by the behavior of another from (sic) whom he is legally accountable.
"A person is legally accountable for the behavior of another person constituting a criminal offense if, with the intent to promote or assist in the commission of an offense he procures, induces, or causes such other person to commit the offense or aids or abets such other person in committing the offense."
Appellant asserts the court erred in failing to define the term "aiding and abetting" as it relates to complicity. The appellant did not request a written charge on this matter, but did orally object at the conclusion of the court's oral charge to the court's instruction in this regard. We have reviewed the court's oral instruction and find it adequately covers the law of complicity as it relates to the immediate offense. See Section 13A-2-23, Code of Alabama 1975, and Black's Law Dictionary, "Aid and Abet," p. 91 (4th ed. 1951).
Additionally, the remedy for the omission of a principle of law from the court's oral charge is to request a written charge which supplies that omission. Section 12-16-13, Code of Alabama 1975; Smith v. State, 262 Ala. 584, 80 So.2d 307 (1955); Thigpen v. State, Ala.Cr.App., 369 So.2d 291 (1978), Ala., 369 So.2d 297 (1979).

III
Appellant asserts the State failed to prove a valid chain of possession of the marijuana introduced into evidence at trial.
Terry Bowman testified he placed the marijuana he purchased from appellant's wife in his school locker, wrapped in paper, and retrieved it from the same place the following morning. He and Twaine Lawrence then smoked a portion of it. The remainder was placed in Twaine Lawrence's shirt pocket, which was worn by Lawrence to the trade school. He removed the shirt at school because of the heat, but picked it up and took it with him when he was called to the office. There the marijuana fell out of his shirt pocket, was picked up by Principal Hulsey and handed to Chief Duke.
The marijuana was taken by Chief Duke, sealed in an envelope and locked in his office. Chief Duke identified the item introduced at trial as identical to that he received from Twaine Lawrence. Chief Duke then turned the substance over to Investigator Charles Tate to take to the State laboratory for analysis. Melinda Long, laboratory analyst for the State, testified at trial that she received the vegetable matter from Charles Tate.
Only the marijuana remaining after the boys smoked at school was introduced as evidence. There was evidence tending to show that the matter analyzed and identified by Tate also contained the remainder of the cigarettes the boys rolled at school. These remnants, which had been picked up by faculty members, however, were not introduced as evidence.
We find no error in the chain of possession established at trial. The identification and continuity of possession were sufficiently established to afford ample assurance of the authenticity of the item. Yarber v. State, Ala., 375 So.2d 1231, (1979). There appeared to be no missing link in the chain of identification. Lewis v. State, Ala. Cr.App., 353 So.2d 60 (1977).

IV
Appellant was indicted for "selling" marijuana. The trial court's sentencing of appellant appears in the record as follows:
"THE COURT: Mr. Snider, you were in Court on October the 15th and after having the trial in this case in Lamar County when the jury returned in open Court a verdict which read: `we, the jury, find the defendant guilty as charged in the *1014 indictment' and that the jury declined to assess a fine and it was signed by Mr. Clayman Johnson who was the foreman in that case.
"THE DEFENDANT: (Defendant nods head.)
"THE COURT: The jury having found you guilty as charged in the indictment; the Court adjudges you guilty of unlawfully selling marijuana."
The judgment and sentence as they originally appeared in the record, however, erroneously adjudged the appellant guilty of "Possession and sale of Marijuana as charged in the indictment." (Emphasis added). Appellant argues this is a variance between the crime for which he was indicted and the crime for which he was convicted, and hence, reversible error.
It is obvious that a clerical error was made in the recording of the judgment and sentence for the record. However, appellant was correctly adjudged and sentenced at trial and at the sentencing hearing in accordance with the indictment. Therefore, pursuant to Rule 10(f), A.R.A.P., we have directed that the error in the judgment entry be corrected, and that a supplemental record reflecting the proper judgment be certified and transmitted to this court. We have received the supplemental record with the corrected judgment entry, have searched the record, and have found no error; therefore, the judgment of conviction by the Lamar Circuit court is affirmed.
AFFIRMED.
All the Judges concur.

ON REHEARING
DeCARLO, Judge.
We have re-examined the record in this case and have determined that, contrary to the statement in our original opinion that "[o]nly the marijuana remaining after the boys smoked at school was introduced as evidence," it appears that two partially-smoked remnants of marijuana cigarettes may also have been admitted at trial.
Appellant correctly states that the proper chain of custody for these two remnants was not established at trial. From that premise, he argues that all the marijuana should have been excluded because the two remnants were intermingled and analyzed with the remainder of the marijuana.
We note that, at the time State's Exhibit 1 (the marijuana) was introduced, appellant objected to its admission on the ground that it was "seized in an illegal search and seizure." There was no objection based on the State's failure to establish the proper chain of custody, or on the intermingling of the cigarette remnants with the loose plant material.
Appellant is bound by the ground of objection stated at trial. Franklin v. State, Ala.Cr.App., 357 So.2d 364, cert. den., Ala., 357 So.2d 368 (1978). Specified grounds of an objection to evidence waive all other grounds. Ward v. State, Ala.Cr. App., 376 So.2d 1112, cert. den., Ala., 376 So.2d 1117 (1979).
We also note that, at the time State's Exhibit 2 (the toxicologist's report) was introduced, appellant made no objection. In order to preserve the question for review, timely objection at trial must be made. Gunn v. State, Ala.Cr.App., 387 So.2d 280, cert. den., Ala., 387 So.2d 283 (1980).
After the State rested, appellant moved to exclude the marijuana admitted into evidence, pointing out, at that time, the failure to establish chain of custody for the remnants and the improper intermingling of the two portions of marijuana.
A motion to exclude, however, will not preserve error in the admission of evidence where no timely objection has been made at the time of its admission. McQueen v. State, Ala.Cr.App., 355 So.2d 407 (1978); Body v. State, Ala.Cr.App., 341 So.2d 744, cert. den., Ala., 341 So.2d 748 (1976).
The soundness of the above rule is apparent; appellant should not be permitted to delay his objection to the State's failure to establish chain of custody until after the *1015 State has rested and the prosecution no longer has the opportunity to remedy the defect in its proof. Had appellant made known the ground of his objection when the evidence was introduced, the State could have established the proper continuity of possession or, failing that, it would have been unable to have the evidence admitted.
OPINION EXTENDED: APPLICATION FOR REHEARING OVERRULED.