986 So.2d 1212 (2007)
Johnny WADE
v.
STATE of Alabama.
Harlan Barbee
v.
State of Alabama.
2060479 and 2060504.
Court of Civil Appeals of Alabama.
December 7, 2007.
*1214 Jon B. Terry of Bains & Terry, Bessemer, for appellant Johnny Wade.
W. Jefferson Sherrer of Sherrer & Sherrer, P.C., Oneonta, for appellants.
Troy King, atty. Gen., and Yvonne A.H. Saxon, asst. atty. gen., for appellee.
MOORE, Judge.
Johnny Wade,[1] doing business as the Joker's Wild Arcade, appeals from a December 22, 2006, judgment condemning 74 gaming machines and $18,362 in cash seized from the Joker's Wild Arcade. Harlan Barbee, owner of 55 of the gaming machines seized, also appeals from that same judgment. We affirm.

Background
In 2005, Wade owned and operated a gaming arcade located in Hueytown known as the "Joker's Wild Arcade." Seventy-four *1215 gaming machines were located inside the arcade. The Jefferson County Sheriff's Department received an anonymous complaint that the Joker's Wild Arcade was operating a gambling enterprise and was paying cash prizes. As a result of that complaint, Jack Self, a deputy with the Vice and Narcotics Division of the Jefferson County Sheriff's Department, was assigned to investigate the arcade. At the conclusion of his investigation, Deputy Self completed a report and assisted in drafting a search warrant for the premises of the arcade. On December 1, 2005, members of the Jefferson County Sheriff's Department, headed by Lieutenant Paul Logan, executed the search warrant for the arcade. During that search, the deputies made a diagram of the establishment and the items found therein. The deputies also took photographs of the machines, of the locations of the machines, and of the attendant working at the arcade that day. The deputies photographed the apron worn by the attendant; a photograph of that apron revealed that it contained a significant amount of cash. Although numerous vouchers in the amount of $5, good for additional games at the Joker's Wild Arcade, were found during the search of the arcade, none of those vouchers were found in the attendant's apron; the vouchers were located in a back room at the arcade.
The deputies also photographed a sign posted on the wall of the arcade; that sign indicated "No Cash Payouts." The "No Cash Payouts" sign was nearly obstructed from view by other notes that had been posted on top of the sign. Another sign posted in the Joker's Wild Arcade read: "See Attendant to Cash Out." The view of this sign was completely unobstructed. Wade and his manager appeared at the scene during the search; Wade identified himself as the owner of the arcade and the machines in that establishment. The sheriff's deputies took a photograph of Wade and of the manager. At the conclusion of the search, the Sheriff's Department seized 74 video gaming machines, $18,362 in cash, and various $5 gift certificates from the arcade.
On December 19, 2005, the State filed a petition, pursuant to § 13A-12-20 et seq., Ala.Code 1975, in the Jefferson Circuit Court, Bessemer Division ("the trial court"), seeking to condemn the gaming machines and the cash seized at the Joker's Wild Arcade. The State named only Wade as a defendant to that petition. Wade answered the petition, asserting that he was the rightful owner of the gaming machines and of the cash seized by the Jefferson County Sheriff's Department. The trial court scheduled the petition for a hearing.
On some unspecified date in the summer of 2006, the Sheriff's Department learned that Harlan Barbee claimed to be the owner of 55 of the 74 gaming machines seized from the arcade. On July 26, 2006, the State amended its forfeiture petition to add Barbee as a defendant.
On December 19, 2006, the trial court held a hearing on the State's forfeiture petition.[2] The actual gaming machines played by Deputy Self during his investigation were produced at the trial; however, the machines were not operable while in the courtroom. The parties did not dispute that the gaming machines at issue *1216 in this case were the same type of machines as those at issue in another circuit court action, State of Alabama v. Redtop Market, Inc., Jefferson Circuit Court, Bessemer Division, CV-03-905.[3]
At the hearing, Deputy Self testified that, in furtherance of his investigation, he had gone to the arcade on three separate occasions: on November 15, 2005; on November 18, 2005; and on November 21, 2005. On his first two visits, Deputy Self put $20 into one or more of the gaming machines but did not win anything, i.e., he played out all of his credits. However, Deputy Self testified that, on this first visit to the Joker's Wild Arcade, he observed a player receiving cash from the attendant on duty. Deputy Self testified that, on that visit, the attendant caused the machine being played by the player to print a ticket, that the attendant handed the player cash, and that the attendant retained the ticket.
On his second visit to the Joker's Wild Arcade, Deputy Self again put a total of $20 into several gaming machines and played until all of his credits were gone. On that visit, Deputy Self again observed another player obtain cash from the attendant on duty after playing one of the machines. Deputy Self testified that, on that second visit, he observed the attendant come to the machine, press the "print ticket" button, and hand cash to the player. The attendant again retained the ticket.
On his third visit to the Joker's Wild Arcade, Deputy Self put $20 into one or more gaming machines. He began to "win" and he accrued credits on a machine. Deputy Self continued to play that machine until he had accrued 500 credits. At that point, Deputy Self called the attendant over and indicated that he wanted to "cash out." The attendant caused the machine that Deputy Self had been playing to print a ticket. The attendant kept the ticket, and she gave Deputy Self $5. Deputy Self also reported that while he was at the arcade, he learned that soft drinks and prepackaged snacks were available to the patrons of that establishment at no charge.
The three machines played by Deputy Self during his investigation were brought into the courtroom at trial, and Deputy Self identified them as the ones he had played while at the Joker's Wild Arcade. Lieutenant Logan also testified at the trial regarding the execution of the search warrant at the arcade. Lieutenant Logan testified regarding a sketch made by a member of the Sheriff's Department during the search and seizure; this sketch identified every machine found in the Joker's Wild Arcade by a number and by its location.
At the close of the State's case, the defendants argued that they were entitled to a judgment as a matter of law because a prior circuit court order in Redtop Market, supra, had determined that the type of gaming machines seized from the Joker's Wild Arcade were legal. However, the defendants did not testify as to the legality *1217 of the gaming machines and, after requesting that the trial court take judicial notice of the order entered in Redtop Market, the defendants rested.
On December 22, 2006, the trial court entered an order finding that the defendants' activities were part of an illegal-gambling enterprise. The trial court ordered, pursuant to § 13A-12-30, Ala.Code 1975, that the 74 gaming machines be destroyed and that the cash seized from the Joker's Wild Arcade be forfeited to the general fund of the State of Alabama. Wade and Barbee filed separate postjudgment motions to alter, amend, or vacate the trial court's judgment. After a hearing, the trial court denied the postjudgment motions on February 2, 2007.
Wade appealed from the trial court's judgment; his appeal was docketed as case no. 2060479. Barbee also appealed from the trial court's judgment; his appeal was docketed as case no. 2060504. This court originally transferred the appeals to the Alabama Supreme Court because the amount in controversy appeared to exceed this court's jurisdiction. The Supreme Court then transferred the appeals to this court, pursuant to § 12-2-7, Ala.Code 1975. These appeals have been consolidated.

Standard of Review
"On appellate review of a ruling from a forfeiture proceeding at which the evidence was presented ore tenus, the trial court's judgment is presumed to be correct unless the record shows it to be contrary to the great weight of the evidence." Ex parte McConathy, 911 So.2d 677, 681 (Ala. 2005) (citing Holloway v. State ex rel. Whetstone, 772 So.2d 475 (Ala.Civ.App. 2000)).

Analysis

Case no. 2060479
The trial court in this case concluded that the only issue before it was whether the activities of Wade and Barbee violated Alabama's antigambling laws. The trial court held that, because Deputy Self paid to play the gaming machines and then received a cash payout from the Joker's Wild Arcade attendant, this case involved an "old-fashioned case of vanilla gambling." We must agree.
The evidence in this case established that the Joker's Wild Arcade contained numerous gaming machines, some of which are referred to as the "Fruit Holder" and others which are referred to as the "Respin." Deputy Self placed money into several of these gaming machines, and, after accruing 500 credits on one machine, he exchanged those credits for $5 cash. As the trial court recognized, this constituted gambling. See Ala.Code 1975, § 13A-12-20(4) ("A person engages in gambling if he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome.").
Wade argues that the games being operated at the Joker's Wild Arcade had been approved as legal by an order entered in Redtop Market, supra. In Redtop Market, the circuit court relied on § 13A-12-76, Ala.Code 1975, to conclude that the "Fruit Holder" gaming machine was a "bona fide coin operated amusement" machine. The court explained the manner in which the Fruit Holder machine operated and concluded that whether the player won or lost hinged predominantly on the skill of the player rather than on chance. The court also expressly stated in its order that, in the operation of the Fruit Holder *1218 games at issue, "[t]here are no cash payouts. A player who accrues a certain number of points receives a voucher or gift card to [a] Walmart [discount department store] or a local gas station or food chain."[4]
Thus, in Redtop Market, supra, the court relied on two factors to conclude that the gaming machines before it were not illegal: (1) that a player's skill predominated over chance in determining whether he or she won; and (2) that there were no cash payouts for winning and that the prizes received were in accord with § 13A-12-76. The circuit court's reliance in Redtop Market on those factors tracked the language of § 13A-12-76, which provides, in pertinent part:
"(a) Sections 13A-12-70 to 13A-12-75, inclusive, shall not apply to a coin-operated game or device designed and manufactured for bona fide amusement purposes which, by application of some skill, only entitles the player to replay the game or device at no additional cost if a single play of the bona fide coin-operated amusement machine or device can reach no more than 25 free replays or can be discharged of accumulated free replay, or rewards the player exclusively with merchandise limited to noncash merchandise, prizes, toys, gift certificates, or novelties, each of which has a wholesale value of not more than five dollars ($5)....
"(b) Any person who gives to any other person money or anything of value for free replays on coin-operated devices described in subsection (a) shall be guilty of a Class A misdemeanor."
(Emphasis added.)
However, in the instant case, the prerequisites established in § 13A-12-76 were not met. In this case, a cash payout was made to at least one player as a result of his successfully playing a gaming machine at the Joker's Wild Arcade. Thus, the facts of this case are distinguishable from those of Redtop Market and, thus, the order entered in Redtop Market is inapplicable to this case. Because the Joker's Wild Arcade attendant provided a cash reward to Deputy Self in exchange for the credits Deputy Self had won while playing one of the gaming machines at the Joker's Wild Arcade, Wade could not have reasonably relied on the circuit court's order in Redtop Market to shield him or his business from enforcement of the antigambling laws or the laws governing seizure and forfeiture.[5]
Wade also purports to rely on Opinion of the Justices No. 358, 692 So.2d 107 (Ala.1997), to argue that the gaming machines at issue in this case have been *1219 previously declared legal arcade machines, thereby protecting Wade from this seizure and forfeiture. However, we note that Opinion of the Justices No. 358 was rejected by Opinion of the Justices No. 373, 795 So.2d 630 (Ala.2001). Thus, because Opinion No. 358 had no applicability as of 2001, Wade was not entitled to rely on that opinion in 2005, when the search-and-seizure warrant at issue in this case was executed.
Additionally, Wade purports to rely on State v. Ray & Ann's Place, 765 So.2d 19 (Ala.Civ.App.2000), as authority for his argument that the gaming machines under consideration in this case were not illegal and, thus, were not subject to forfeiture by the State. In State v. Ray & Ann's Place, this court affirmed, without an opinion, a trial court's judgment in favor of an arcade owner whose gaming machines had been seized by the State. Because the trial court's judgment in that case was affirmed without an opinion, the no-opinion order of affirmance offers no precedential value. See Rule 53(d), Ala. R.App. P. In fact, the no-opinion order of affirmance does not even contain a statement of the facts of that case. Thus, State v. Ray & Ann's Place offers no support for Wade in this case.
In addition, the only writing issued in Ray & Ann's Place appears to support the judgment entered in this case. Judge Monroe, who, on application for rehearing, issued the only writing in that case, stated that he concurred with the judgment entered by the trial court in favor of the arcade owner because the State had failed to meet its burden of proof in establishing that the machines seized from Ray & Ann's Place were illegal-gambling devices. See 765 So.2d at 20 (Monroe, J., joined by Yates, J., concurring specially). Judge Monroe identified several areas in which the evidence offered by the State in that case had been deficient. Judge Monroe pointed out that the gaming machines were seized from the owner's arcade six months after the undercover agent had last played in that arcade. Id. During that six-month delay, new machines had been delivered to the owner's arcade after the undercover agent had been in that arcade and, as a result, at trial the undercover agent could not state with certainty that the games on the machines seized were the same games he had played when he had been in the owner's arcade. Id. Further, the undercover agent could not identify the specific machines that he had played when he had been in the owner's arcade. Id. Finally, the State agent who had prepared the search-and-seizure affidavit could not identify whether any of the gaming machines actually seized had ever been played by the undercover agent. Id.
Thus, the evidence, or the lack thereof, presented by the State in Ray and Ann's Place explains why this court affirmed the trial court's judgment in favor of the arcade owner  the State failed to present sufficient evidence to establish that the games seized from the arcade owner were, in fact, illegal-gambling devices. However, the evidence presented in this case is not lacking. In this case, the State established that the Joker's Wild Arcade was operating an arcade business with a significant number of gaming machines. The State established that players paid for the opportunity to play the gaming machines. Additionally, the State offered testimony tending to establish that, on multiple dates, the attendants at the Joker's Wild Arcade had made cash payouts to multiple players who successfully played the machines.
Additionally, a sign posted on the wall of the arcade instructed the players to see an attendant to "cash out." Further, the deputies seized nearly $19,000 in cash from *1220 the Joker's Wild Arcade on December 1, 2005, upon executing the search-and-seizure warrant. The cumulative effect of this evidence was sufficient to establish that an illegal-gambling enterprise was being conducted at the Joker's Wild Arcade. The players paid to play the gaming machines at the Joker's Wild Arcade, and, if they were successful, they received a cash prize. Those activities violated Alabama's antigambling statutes.
Wade also argues on appeal that, if the trial court's judgment is upheld, he will be subjected to an ex post facto application of the antigambling laws. Apparently, Wade argues that an affirmance of the trial court's judgment would require this court to improperly rely on Barber v. Jefferson County Racing Association, Inc., 960 So.2d 599 (Ala.2006), which our supreme court released after the December 1, 2005, seizure of the gaming machines from the Joker's Wild Arcade. Again, we disagree with Wade.
Section 13A-12-76, Ala.Code 1975, known as Alabama's "Chucky E. Cheese" Act, was enacted in 1996, long before the execution of the December 2005 search warrant at the Joker's Wild Arcade. That statute expressly prohibits the payment of cash as a prize or reward for successfully playing gaming machines. Because all citizens of the State are presumed to know the law, see Sly v. State, 387 So.2d 913 (Ala.Crim.App.1980); Baker v. State, 52 Ala.App. 150, 290 So.2d 214 (Crim.1973); and Miller v. State, 39 Ala.App. 584, 105 So.2d 711 (1958), Wade knew or should have known, at the time of Deputy Self's investigation into the Joker's Wild Arcade, that any cash payout as a result of playing the gaming machines would violate Alabama's antigambling statutes. We, therefore, reject Wade's argument that he has been denied due process of law by retroactive application of Alabama's antigambling, seizure, and forfeiture statutes.
Finally, Wade argues that the forfeiture of his property and money as ordered in this case was unreasonable and not proper under Alabama law. We disagree. Section 13A-12-30, Ala.Code 1975, provides, in pertinent part:
"(a) Any gambling device or gambling record possessed or used in violation of this article is forfeited to the state, and shall by court order be destroyed or otherwise disposed of as the court directs.
"....
"(c) Money used as bets or stakes in gambling activity in violation of this article is forfeited to the state and by court order shall be transmitted to the general fund of the state."
We do not read the antigambling statutes and the forfeiture statute as narrowly as Wade. In this case, it is undisputed that an employee of the Joker's Wild Arcade paid Deputy Self and others in cash as a result of their having earned credits on multiple gaming machines on multiple dates. The payment in cash as a reward for playing the gaming machines, in and of itself, violated the antigambling laws of this State.
Additionally, it was undisputed at the forfeiture hearing that operation of the gaming machines was the only business being conducted on the premises of the Joker's Wild Arcade. Therefore, any money found on the premises of the Joker's Wild Arcade must have been received as "bets" from the players or used as "stakes" in furtherance of the business of the Joker's Wild Arcade. Further, Deputy Self testified at the forfeiture proceeding that all the machines seized from the Joker's Wild Arcade were the same type as those he had played. Therefore, there *1221 were no significant differences among the gaming machines seized.
In the absence of countervailing testimony, the only reasonable inference to be drawn from the evidence in this case was that all the gaming machines and all the cash seized from the Joker's Wild Arcade were part and parcel of the same illegal-gambling enterprise. Pursuant to § 13A-12-30, the device or devices used in violating the antigambling statutes and any money used as bets or stakes in violation of the anti-gambling statutes are subject to forfeiture to the State. Because the seized gaming machines and the seized cash had been used in violating the antigambling laws, they were properly forfeited to the State.

Case no. 2060504
Barbee first asserts that the State did not timely institute forfeiture proceedings against him and that, as a result, the State violated § 20-2-93(c), Ala.Code 1975. We note that the forfeiture of Barbee's property was not made pursuant to § 20-2-93(c); in this case, the seizure and forfeiture was made pursuant to § 13A-12-30, Ala.Code 1975. Section 20-2-93(c) is expressly applicable to property seized in connection with a violation of the Alabama Uniform Controlled Substances Act, § 20-2-1 et seq., Ala.Code 1975.
On appeal, Barbee has not cited this court to even one case applying those provisions to the forfeiture of a gambling device. Thus, Barbee has not established in his brief that the promptness requirements established in the Alabama Uniform Controlled Substances Act are applicable to a seizure and forfeiture made pursuant to § 13A-12-30.
However, to the extent that some comparable promptness requirement applies to forfeiture proceedings instituted under § 13A-12-30, we conclude that the State acted in a reasonable and timely manner in instituting the forfeiture proceedings at issue in this case.
In this case, the Jefferson County Sheriff's Department seized the gaming machines on December 1, 2005, and filed its initial forfeiture petition on December 19, 2005. In that initial petition, the State named only Wade as a defendant.[6] In his answer to the forfeiture petition, Wade asserted that he was the owner of all the machines and currency seized from the Joker's Wild Arcade on December 1, 2005. Based on Wade's answer to the forfeiture petition, the State had no reason to further investigate the ownership of the gaming machines.
At the hearing, Barbee testified that he was aware that the State had seized property belonging to him as of December 1, 2005, the day the search warrant was served on the Joker's Wild Arcade and the day the State seized the gaming machines from the Joker's Wild Arcade. Barbee testified that he had appeared at the Joker's Wild Arcade during the seizure and had notified some unidentified person of his ownership interest in the gaming machines.[7] Despite knowing that his property had been seized by the State, Barbee took no action to contact the Sheriff's Department *1222 or to otherwise protect his interests. Six or seven months after the seizure, the State learned that Barbee claimed to own 55 of the 74 gaming machines seized from the Joker's Wild Arcade. On July 26, 2006, the State amended its forfeiture petition to add Barbee as a defendant.
In response to questioning by the State's attorney as to why he waited six or seven months to ask about his property, Barbee testified that "[Wade's] lawyer was taking care of it. [Wade] [w]as trying to get them back at that time." Barbee also indicated that during that six- to seven-month period when he was silent, he often checked with Wade as to the status of the forfeiture petition.
Barbee then sought to dismiss the forfeiture petition as to him, claiming that the State had not timely instituted the forfeiture action. The trial court denied that motion, obviously determining that the State had acted reasonably and timely in amending its petition as soon as it had learned of Barbee's involvement in the case.
Thus, the record establishes that Barbee knew his property had been seized as of December 1, 2005, that Barbee knew the forfeiture petition had been filed as to Wade but did nothing to notify the State of his claim to the property, and that Barbee continued to check with Wade as to the status of that petition for six to seven months before finally notifying the State of his interest. Based on these circumstances, we cannot conclude that the trial court erred in determining that the State acted in a timely fashion.
Barbee next argues that the trial court violated the provisions of § 20-2-93(h), Ala.Code 1975, in ordering the forfeiture of his gaming machines to the State.
Section 20-2-93(h) provides, in part:
"An owner's or bona fide lienholder's interest in real property or fixtures shall not be forfeited under this section for any act or omission unless the state proves that that act or omission was committed or omitted with the knowledge or consent of that owner or lienholder. An owner's or bona fide lienholder's interest in any type of property other than real property and fixtures shall be forfeited under this section unless the owner or bona fide lienholder proves both that the act or omission subjecting the property to forfeiture was committed or omitted without the owner's or lienholder's knowledge or consent and that the owner or lienholder could not have obtained by the exercise of reasonable diligence knowledge of the intended illegal use of the property so as to have prevented such use."
(Emphasis added.) As observed earlier, we note that Barbee has not established that § 20-2-93  part of the Alabama Uniform Controlled Substances Act  specifically applies to the seizure and forfeiture of gambling devices pursuant to § 13A-12-30. Barbee has not established that the forfeiture provisions of the Alabama Uniform Controlled Substances Act govern the forfeiture of a gambling device.
However, we conclude that, even if burden-shifting provisions similar to those set forth in § 20-2-93(h) could be read into Alabama's antigambling legislation, no error occurred in this case. First, the gaming machines and the cash at issue in this case are not real property or fixtures.[8] Thus, tracking the language of § 20-2-93(h), the gaming machines at issue *1223 in this case are "any type of property other than real property and fixtures." Under the burden-shifting provisions set forth in the Alabama Uniform Controlled Substances Act, when property other than real property or fixtures is involved in illegal activities, that property is deemed forfeited unless the owner proves that the illegal activities were committed without his or her knowledge or consent and that, by the exercise of reasonable diligence, he or she could not have known of the intended illegal use of the property so as to prevent such use. Thus, the burden of proof in this regard is on the owner, not the State.
In this case, Barbee did not meet this burden of proof at trial. In fact, Barbee did not even testify as to this issue at the hearing.[9] Therefore, Barbee did not establish that he could not have known, by the exercise of reasonable diligence, that the gaming machines would be used for illegal purposes. Moreover, because of the very nature of the gaming machines owned by Barbee, we conclude that he should have known that the machines might easily be used to violate the antigambling statutes. The burden of ensuring that the gaming machines were not used to violate the antigambling statutes fell, as it must, on the owners of those machines.
This allocation of the burden of proof is also reflected in § 13A-12-28, Ala. Code 1975. That statute addresses prima facie proof of gambling offenses and provides, in pertinent part:
"(a) Proof of possession of any gambling device, as defined by subdivision (5) of Section 13A-12-20 or any gambling record specified in Sections 13A-12-24 and 13A-12-25 is prima facie evidence of possession thereof with knowledge of its character or contents."
Because cash payouts were being made at the Joker's Wild Arcade, the gaming machines seized therefrom are deemed to be gambling devices. Under Alabama law, the very act of possessing a gambling device is considered prima facie evidence that the possessor has knowledge of its character and contents. Because the State established that Wade and Barbee  the owners of the gaming machines at issue in this case  possessed gambling devices, the State made a prima facie case that Wade and Barbee knew the character and contents of those machines.
At that point, the burden of proof shifted to Wade and Barbee to prove that they did not know and could not have known of the illegal nature or operation of the gaming machines. Because Wade and Barbee did not rebut the State's prima facie evidence, they did not meet their burden of proof. Thus, we conclude that any rights created in favor of Wade or Barbee were not violated in this case.
Barbee next asserts that the trial court erred in its rulings or in failing to rule regarding certain discovery matters. We cannot, however, address this issue because Barbee's brief fails to provide this court with sufficient information regarding the purported discovery issues. The "Statement of Facts" contained in Barbee's brief makes no reference to the discovery conducted in this case or to any of the trial court's rulings relating to discovery matters. Additionally, Barbee's "argument" on this issue consists of extremely brief summaries of two cases addressing general discovery principles. Barbee's brief does not attempt to apply those principles to the facts of this case. Therefore, *1224 as to this issue, Barbee's brief fails to comply with Rule 28, Ala. R.App. P., and we cannot address this issue. See also University of South Alabama v. Progressive Ins. Co., 904 So.2d 1242, 1248 (Ala. 2004) ("`[W]e cannot create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.'" (quoting Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala.1992))); and Messer v. Messer, 621 So.2d 1343, 1344 (Ala.Civ.App.1993) ("Failure by an appellant to argue an issue in its brief waives that issue and precludes it from consideration on appeal.").

Conclusion
We find no error in the issues raised on appeal. We, therefore, affirm the trial court's judgment as to the forfeiture of the 74 gaming machines and the $18,362 in cash seized from the Joker's Wild Arcade on December 1, 2005.
2060479  AFFIRMED.
2060504  AFFIRMED.
THOMPSON, P.J., and BRYAN, J., concur.
PITTMAN, J., concurs specially.
THOMAS, J., concurs in the result, without writing.
PITTMAN, Judge, concurring specially.
I concur in the main opinion, but I write specially to note the main opinion's consideration of Barbee's invocation of a "promptness" requirement that is applicable only to forfeiture proceedings under the Controlled Substances Act rather than forfeiture proceedings under Alabama gambling laws. Although the text of the statute upon which the forfeiture at issue is based, i.e., § 13A-12-30, Ala.Code 1975, contains no language concerning the duty of district attorneys to promptly institute forfeiture proceedings, the commentary to that statute indicates that it "continues" certain repealed provisions of former Title 13 of the 1975 Code, including Ala.Code 1975, § 13-7-73. Under § 13-7-73, upon the receipt of a sheriff's report of seizure and detention of a gambling device, "it shall be the duty of the district attorney... to forthwith file a complaint in the circuit court of the proper county" seeking a forfeiture judgment (emphasis added). I therefore agree that it is appropriate to consider whether "some comparable promptness requirement" has been satisfied, although I perceive no material distinction between a duty to file a complaint "forthwith" and a duty to institute forfeiture proceedings "promptly."
NOTES
[1] In the record, Wade's first name is spelled both "Johny" and "Johnny." In this opinion, we use the spelling "Johnny."
[2] Before the trial court conducted a hearing on the State's forfeiture petition, the Alabama Supreme Court issued its opinion in Barber v. Jefferson County Racing Association, Inc., 960 So.2d 599 (Ala.2006). In that case, the Alabama Supreme Court concluded that the gaming machines at issue in that case were "slot machines" and, thus, violated Alabama's antigambling statutes.
[3] On February 3, 2004, the Jefferson Circuit Court, Bessemer Division, in State of Alabama v. Redtop Market, Inc., supra, entered a detailed order concluding that the gaming machines at issue in that case were predominantly games of skill rather than predominantly games of chance. For that reason, the Jefferson Circuit Court held that the gaming machines at issue in that case were not illegal under Alabama's "Chuck E. Cheese" Act, § 13A-12-76, Ala.Code 1975. Later that same year, in Ex parte Ted's Game Enterprises, 893 So.2d 376 (Ala.2004), the Alabama Supreme Court concluded that even games or activities in which skill predominated over chance in determining the outcome could not be legalized by the Alabama Legislature without running afoul Art. IV, § 65, Ala. Const. 1901, which prohibits lotteries in the State of Alabama.
[4] The State appealed the judgment entered by the trial court in Redtop Market. The Alabama Supreme Court affirmed the judgment of the trial court because of a procedural error, not because it approved of the result or the reasoning used by the trial court. See State v. Redtop Market, Inc., 937 So.2d 1013 (Ala.2006).
[5] We acknowledge that on January 26, 2007, the circuit court in Redtop Market, supra, recognized that the Alabama Supreme Court's decision in Barber v. Jefferson County Racing Association, Inc., 960 So.2d 599 (Ala.2006), required a reversal of the order it had entered in Redtop Market. The court subsequently amended its order in Redtop Market to declare those gaming machines known as the "Fruit Holder," the "Respin 7," "Funny Fruit," and the "Alabama Nudge" to be "slot machines," in violation of Alabama's antigambling laws. However, the Barber decision was released after the Jefferson County Sheriff's Department had seized Wade's and Barbee's gaming machines. Therefore, we do not rely on that case in determining whether the activities under consideration in this case constituted gambling or in determining whether the gaming machines at issue in this case constitute gambling devices.
[6] Wade does not argue that the State failed to timely institute its forfeiture action as to him.
[7] The State denied that Barbee had notified anyone acting on its behalf of his interest in the gaming machines on the date of the seizure. Additionally, we note that, during the search and seizure conducted by the Sheriff's Department at the Joker's Wild Arcade on December 1, 2005, the Sheriff's Department photographed every person on the premises that day who was employed by or involved with the Joker's Wild Arcade. The exhibits submitted to the trial court did not contain a photograph of Barbee.
[8] A "fixture" is defined as "[p]ersonal property that is attached to land or a building and that is regarded as an irremovable part of the real property, such as a fireplace built into a home." Black's Law Dictionary 669 (8th ed.2004).
[9] Barbee briefly testified in support of his motion to dismiss the forfeiture petition as being untimely filed. However, his testimony was limited to only that issue.